UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JEFFREY R. MOSTER,

           Petitioner,

     - against –

CREDIT SUISSE SECURITIES (USA)
LLC,

          Respondent.

------------------------------X

**MEMORANDUM AND ORDER**

22 Civ. 999 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The origin of the motions before the Court lies in an arbitration (the "Arbitration") that began in 2016 between petitioner Jeffrey R. Moster ("petitioner" or "Moster") and others and respondent Credit Suisse Securities (USA) LLC ("respondent" or "Credit Suisse").  Petitioner's claims were dismissed by the arbitration panel (the "Panel") on January 22, 2019 (the "2019 Order") after the Panel found that he reached a walk-away settlement agreement with respondent.  Petitioner now moves to vacate an arbitration award issued on November 5, 2021 (the "2021 Award"), concerning other claimants in the Arbitration[1], but which petitioner argues made final the 2019 Order, under Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.  Petitioner alleges that the arbitrators exceeded their authority in

_____
[1] The November 5, 2021 Award also assessed Moster $6,000 in hearing fees.

dismissing his claims, acted in manifest disregard of the law, and deprived him of a fair hearing.  Respondent argues that the petition should be dismissed as untimely or, in the alternative, that it should be denied because the arbitrators acted appropriately and within their scope of authority, did not manifestly disregard the law, and afforded petitioner a fair hearing.  For the reasons stated below, respondent's motion is granted and the petition to vacate the arbitration award is denied.

## BACKGROUND

### I.   Factual Background and Arbitration

Petitioner is a former employee and FINRA-registered "Associated Person" of respondent.  See Petition ¶ 2, ECF No. 1. The events precipitating the underlying arbitration occurred when respondent closed its private banking division in the United States, allegedly terminating petitioner and cancelling his vested deferred compensation.  Id. ¶ 7.

On September 26, 2016, petitioner, along with fourteen other claimants, filed a Statement of Claim and commenced an arbitration with FINRA against respondent, asserting claims of breach of contract, fraud, unjust enrichment, violation of the FINRA Rules of Fair Practice, and violation of the Illinois Wage Payment and Collection Act ("IWPCA").  Id. ¶¶ 6, 10.  Petitioner, along with

the other claimants, was represented by Nicholas Iavarone.  See
Declaration of Barry R. Lax in Support of Petition to Vacate
Arbitration Award ("Lax Decl.") Ex. 10, ECF No. 6.[2]  In his
Statement of Claim, petitioner requested an award of $1,700,000 in
compensatory damages and $1,700,000 in punitive damages, as well
as attorneys' fees and monthly penalties pursuant to the IWPCA.
Petition ¶ 9.  On November 17, 2016, respondent filed an Answer to
the Statement of Claim, as well as Counterclaims, asserting breach
of contract, unjust enrichment, breach of fiduciary duty, unfair
competition, and misappropriation of trade secrets.  Id. ¶ 11;
Declaration of Kenneth J. Kelly in Support of Respondent's
Opposition to the Petition to Vacate the Arbitration Award and in
Support of Respondent's Motion to Dismiss ("Kelly Decl.") Ex. 32
at 4.[3]  On November 28, 2016, petitioner filed an Answer to
respondent's Counterclaims.  See Petition ¶ 13.

An initial settlement conference with Mediator Howard Tescher
was held on December 27, 2017, shortly after the arbitral panel
was convened.  Moster and his counsel, Mr. Iavarone and Mr.

---

[2]    Mr. Lax, petitioner's current counsel, replaced Mr. Iavarone after the
dispute about the settlement agreement arose.  Mr. Iavarone continued to
represent other claimants in the Arbitration.

[3]    Mr. Kelly is a member of Epstein, Becker & Green, the firm which has
represented Credit Suisse throughout the Arbitration.  From the documents
submitted, it does not appear that Mr. Kelly was involved in the settlement
negotiations with petitioner's counsel in 2017 and 2018.

Landsman, and other claimants participated.  It is undisputed that counsel was authorized to speak[4] on Moster's behalf at the mediation session.

Following settlement with some of the claimants[5], petitioner and eight remaining claimants filed an Amended Statement of Claim on May 7, 2018 asserting additional claims of fraudulent inducement and breach of fiduciary duty.  Id. ¶ 25.  On June 8, 2018, respondent filed an Answer to the Amended Statement of Claim.  Id. ¶ 26.  The arbitration hearings commenced on February 12, 2018 and lasted through September 27, 2018.  Id. ¶ 27.

## II.  The Walk-Away Agreement

On September 18, 2018, toward the conclusion of the arbitral hearings, Tescher, the parties' mediator, reached out to respondent to relay a demand from petitioner for a monetary settlement.[6]  See Kelly Decl. Ex. 3.  On October 1, 2018, respondent replied to Tescher explaining that, following discovery,

---

[4]    See Kelly Decl. Ex. 2 at 3453:23-24 ("I never told them [his attorneys] they were not authorized to speak.").

[5]    Six of the claimants reached settlements with respondent prior to May 7, 2018.  Id. ¶¶ 23, 24

[6]    The transcript from the hearing addressing the "walk-away settlement" indicates that the "catalyst" for the renewal of settlement discussions was the request by Mr. Iavarone for an additional retainer of two installments of $200,000s from claimants (including Moster) to continue their representation. Kelly Decl. Ex. 2, 3435:6-3436:16.

respondent believed that it would prevail on petitioner's claims, its counterclaim for $32,312, and receive a proportional share of the "millions of dollars that Credit Suisse ha[d] already spent . . . [and would be] required to spend to defend against Mr. Moster's frivolous claims." See Kelly Decl. Ex. 4.  Thus, respondent took the position that it would only "be willing to consider settling with Mr. Moster" provided that he agreed to "a complete walkaway whereby no money changes hands," in which case respondent would also dismiss its counterclaims.  Id.  Respondent further demanded petitioner both sign a stipulation of dismissal and a written agreement acknowledging that he had voluntarily resigned, rather than having been improperly terminated.  Id.  Tescher responded by informing respondent that his view was that a "[w]alk away is fine but no representations.  Mutual dismissal ok."  See Kelly Decl. Ex. 5.

On October 3, 2018, respondent sent Tescher a draft walk-away agreement.   Thereafter,  Tescher  provided  respondent  with petitioner's counsel's edits.  See Kelly Decl. Exs. 6, 7.  Tescher further indicated that petitioner was involved in reviewing and revising the language of the draft walk-away agreement, notifying respondent on one occasion to remove "the no money paid sentence that they feel is highly prejudicial and must come out."  Kelly

Decl. Ex. 7 at 3 (emphasis added).  On October 11 and 12, 2018, respondent sent revised drafts of the Joint Consent Dismissal Order to Tescher, as well as a draft letter to be transmitted to FINRA. See Kelly Decl. Exs. 8-10, ECF Nos. 17-8, 17-9, 17-10.  On October 16, 2018, Tescher informed respondent that "[they] may have lost Moster."  See Kelly Decl. Ex. 13, ECF No. 17-13.  However, on October 19, 2018, Tescher informed respondent: "We're good. Settled."  See Kelly Decl. Ex. 14, ECF No. 17-14.  Respondent's counsel emailed petitioner's counsel to confirm:

> Howard [Tescher] informs me that Mr. Moster has agreed to resolve his claims against Credit Suisse, and Credit Suisse's counterclaims against him, in accordance with the terms of the attached order of dismissal and transmittal letter.  Please confirm and indicate your approval of dismissal and transmittal letter, and I will file them.

See Kelly Decl. Ex. 16.  The following day, petitioner's counsel responded that he was "[f]ine" with approving the order of dismissal and transmittal letter.[7]  Id.

After receiving Iavarone's response on October 20, 2018 and on notice to both counsel for Moster, respondent filed and served the letter and Joint Consent Dismissal Order, which was transmitted to the Panel on October 23, 2018.  See Kelly Decl. Ex. 19.  After

---

[7]    Petitioner's counsel previously communicated his agreement to other proposals by respondent's counsel throughout the arbitration process by stating "Fine," as he did in his October 20 email response.  See Kelly Decl. Ex. 17.

receipt, the Panel Chairperson directed petitioner's counsel through a case administrator to acknowledge in writing that petitioner agreed to the settlement. See Kelly Decl. Ex. 20. On October 26, 2018, respondent sent an email to petitioner's counsel with a draft letter confirming the agreement. See Kelly Decl. Ex. 21. On October 30, petitioner's counsel informed the Panel and respondent that, although petitioner had previously decided to "walk away from his claims even after the Chilton award was issued finding that Credit Suisse engaged in the very improper behavior at issue in this case," he had now "instructed [counsel] not to submit a written statement of settlement as he has made the decision to continue with his claims in this case." See Kelly Decl. Ex. 23. See also id. at Ex. 22.

### III. Panel Hearing and 2019 Order Regarding the Walk-Away Agreement

On November 5, 2018, respondent filed a request for the Panel to comply with FINRA Rule 13700(a),[8] or in the alternative under FINRA Rule 13504(a)(6)(A),[9] to dismiss petitioner's attempt to

---

[8]    FINRA Rule 13700(a) provides: "The panel must dismiss an arbitration or a claim at the joint request of the parties to that arbitration or claim. The dismissal will be with or without prejudice, depending on the request of the parties."

[9]    FINRA Rule 13504(a)(6)(A) permits an arbitrator to dismiss claims where the "non-moving party previously released the claim(s) in dispute by a signed settlement agreement and/or written release."

revive the claims that had he dismissed with prejudice.  See Kelly
Decl. Ex. 24.  At the Panel's request, the parties filed written
submissions in preparation for a hearing regarding the walk-away
settlement agreement.[10]  See Kelly Decl. Exs. 25, 26.

On January 18, 2019, the Panel held a hearing on "respondent's
request to dismiss Claimant Moster's claim or to comply with FINRA
Rule 13700(a)."  Kelly Decl. Ex. 2 at 3414:4-6.  The hearing lasted
over two hours and produced a transcript slightly over 100 pages
in length.  See Kelly Decl. Ex. 2.  Petitioner testified at the
hearing before the Panel regarding the settlement agreement.  See
Kelly Decl. Ex. 2 at 3425-3480; Petition ¶ 41.  During his
testimony, petitioner acknowledged numerous times that he had
instructed his attorney to "pursue a walk-away," see e.g. Kelly
Decl. Ex. 2 at 3447:21-22 and 3449:14-16, without imposing a time
limit in which to reach an agreement, see e.g. id. at 3451:12-24,
and that he was aware that his attorney was in fact negotiating an
agreement to a walk away with Credit Suisse, see e.g. id. at
3449:14-3450:18.   He further acknowledged that he "never told
them they were not authorized to speak."  Id. at 3454:23-24.  On
cross-examination, petitioner further confirmed that he "never

---

[10]    On November 3, 2018, petitioner hired new counsel, Lax & Neville LLP, who
continues to represent him in this action.  See Petition ¶ 37.

revoked [Iavarone's] authority" to represent him or to settle his

claims.  Id. at 3463:22-24.

On January 22, 2019, the Panel issued an order (the 2019

Order) stating:

> The Panel, having reviewed the written submissions of
> the parties, heard testimony from Claimant Moster and
> entertained oral argument from opposing counsel, hereby
> grants Credit Suisse's Request and Claimant Moster's
> claim is dismissed with prejudice.

See Kelly Decl. Ex. 1.


Almost a year later, at a hearing conference on November 20,

2019, petitioner moved the Panel to reconsider the January 22,

2019 Order.[11]  See Kelly Decl. Ex. 27.  On December 2, 2019,

respondent filed an opposition to petitioner's oral request, and

on December 9, 2019, petitioner filed a reply.  See Kelly Decl.

Exs. 28, 29.  Following oral argument held on April 15, 2020, the

Panel issued an order on April 16, 2020 affirming the 2019 Order.

See Kelly Decl. Exs. 30, 31.  Petitioner did not appeal or

otherwise further challenge the April 16, 2020 Order.

**IV.  Procedural Posture**

On November 5, 2021, the Panel issued the 2021 Award as to

the remaining claimants.  As part of the recital of all the motions

---

[11]    Replacement of one of the arbitrators provided petitioner with an
opportunity to reargue the earlier dismissal order (the 2019 Order).  See
Petitioner's Mem. at 2 n.3; Respondent's Mem. at 11 n.15.

-9-

presented to the Panel, the Panel documented the motions, briefing, and hearings related to the instant controversy.  The recital concluded: "Therefore, the Panel made no determination with respect to any of the relief requests brought by or against Moster."  Kelly Decl. Ex. 32 at 8.  It seems reasonable to conclude that these recitals were included as a predicate to the assessment of $6,000 in hearing session fees against Moster.

On February 3, 2022, petitioner filed a petition to vacate the 2021 Award, as well as a memorandum of law in support of his petition, arguing in part that the 2021 Award "ma[de] final [the] order . . .  granting Credit Suisse's motion to 'enforce' [the] 'settlement agreement'."  ECF Nos. 1, 7.  On February 4, 2022, petitioner filed a request for issuance of a summons and contacted respondent's counsel to inquire whether they would accept service on behalf of respondent, to which they replied that they were "not authorized to accept service on behalf of Credit Suisse."  See ECF No. 8; Kelly Decl. Ex. 33.  An electronic summons was issued on February 7, 2022, and petitioner's affidavits of service state that service took place that same day.  See ECF Nos. 9-12.

On February 28, 2022, respondent filed an answer to the petition to vacate the arbitration award, as well as a motion to dismiss the petition.  See ECF Nos. 14, 16.  After instruction

from the Court to follow a four-brief schedule, see ECF No. 23, petitioner filed an opposition to the motion to dismiss and in support of the motion to vacate on June 23, 2022, and respondent filed a reply memorandum in support of its motion to dismiss on July 7, 2022.  See ECF Nos. 26, 29.

## DISCUSSION

Petitioner moves to vacate the 2021 Award, and by extension the 2019 Order, on the basis that the Panel exceeded its authority, manifestly disregarded the law, and deprived him of a full and fair hearing when it dismissed his claim.  See Petitioner's Memorandum of Law in Support of Petition to Vacate Arbitration Award at 5-6 ("Petitioner's Mem."), ECF No. 7.  Respondent counters that petitioner's motion to vacate is untimely, as the 2019 Order dismissed petitioner's claims, and the FAA time period to move to vacate has long passed.  Respondent additionally argues that even if the motion to vacate was timely, the Panel acted within its authority, did not disregard the law, and afforded petitioner a fair arbitration hearing.  See Memorandum of Law in Opposition to Petitioner's Motion to Vacate Arbitration Award and in Support of Respondent's Motion to Dismiss Petitioner's Motion to Vacate at 8, 20 ("Respondent's Mem."), ECF No. 18.

First, we address the threshold issue of whether the challenge

-11-

to the 2019 Order was timely.  Second, assuming that the issuance
of the 2021 Award provided petitioner a second opportunity to
challenge the 2019 Order, we examine whether he timely moved to
vacate the 2021 Award.

**I.    Petitioner's Motion to Vacate the 2019 Order is Untimely**

Under the FAA, "[n]otice of a motion to vacate, modify, or
correct an award must be served upon the adverse party or his
attorney within three months after the award is filed or
delivered."  9 U.S.C. § 12.  There are "[n]o exception[s]" to this
strict three-months limitations period.  Florasynth, Inc. v.
Pickholz, 750 F.2d 171, 175 (2d Cir. 1984).  Accordingly, "a party
may not raise a motion to vacate, modify, or correct an arbitration
award after the three-month period has run."  Id.

Respondent argues that petitioner failed to serve his
petition to vacate within the statutory three-month time period,
which began to run the day that the Panel issued the 2019 Order
and dismissed his claims.  See Respondent's Mem. at 8.  Petitioner
argues that he could not have moved to vacate the 2019 Order at
the time it was issued for a number of reasons: (1) the 2019 Order
was "interim" when issued; (2) the Arbitration continued against
other claimants following the issuance of the 2019 Order; and (3)

the 2019 Order lacked necessary formalism.[12]  We address each of these in turn and reject them all.

First, petitioner argues that, regardless of his counsel's belief at the time that the 2019 Order was improper, he could not have appealed the order when it was issued because he believed that it was an "interim" rather than a "final" award.  See Consolidated Memorandum of Law in Opposition to Respondent's Motion to Dismiss and in Reply to Respondent's Opposition Memorandum ("Petitioner's Opp'n") at 3, ECF No. 26.  This argument fails.  Contrary to petitioner's claim, the 2019 Order was final.  "[A]n arbitration award is final if it resolve[s] all issues submitted to arbitration, and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties."  Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 177 (2d Cir. 1998) (internal citations and quotation marks omitted); Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 413 (2d Cir. 1980) ("In order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them.").

---

[12]    Petitioner does not separately advance arguments based on the April 16, 2020 Order denying his motion to reargue the 2019 Order.  We will follow suit since, based on the analysis that follows, the result would be no different given that over 20 months passed from the April 16, 2020 Order before this petition was filed.

The 2019 Order, which was issued after extensive briefing and a full hearing, dismissed Moster's claim "with prejudice," stating:

> The Panel, having reviewed the written submission of the parties, heard testimony from Claimant Moster and entertained oral argument from opposing counsel, hereby grants Credit Suisse's Request and Claimant Moster's claim is dismissed with prejudice."

See Kelly Decl. Ex. 1.

On its face, it is clear that the 2019 Order was "intended by the arbitrators to be their complete determination of all [of his] claims." Michaels, 624 F.2d at 413. Petitioner's argument to the contrary directly contradicts the language of the 2019 Order. Moreover, he fails to provide any support for his position that the Panel intended the 2019 Order to be "interim," such as any conditional language in the Order or any subsequent actions by the Panel to further address Moster's claims. Having determined that the walk-away settlement was binding, there was nothing further for the Panel to decide. Indeed, this is confirmed by the Panel's recital in the 2021 Award: "Therefore, the Panel made no determination with respect to any of the relief requests brought by or against Moster." Kelly Decl. Ex. 32 at 8.

Nor does the fact that the Panel did not address hearing session fees in the 2019 Order affect finality for the purpose of

-14-

judicial review.  It is well-settled law that unresolved attorneys' fees do not affect finality.  <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196, 202 (1988) (creating a "uniform rule that an unresolved issue of attorneys' fees for the litigation in question does not prevent judgment on the merits from being final."); <u>see also</u> <u>Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Eng'rs & Participating Emps.</u>, 571 U.S. 177, 185 (2014).  There is no persuasive basis to distinguish a subsequent award of hearing fees, which are even less related to the underlying merits.

Additionally, dismissals "with prejudice" are final.  <u>See</u> <u>Israel v. Carpenter</u>, 120 F.3d 361, 365 (2d Cir. 1997) ("Ordinarily, a stipulation of dismissal 'with prejudice' as to a pending action is unambiguous; like any such dismissal, it is deemed a final adjudication on the merits.") (internal quotation marks and citation omitted); <u>see also</u> Fed. R. Civ. P. 41.

Second, it is immaterial that the Arbitration continued after the 2019 Order was issued without petitioner's participation.  <u>See</u> <u>Northeast Secs., Inc. v.  Quest Cap. Strategies, Inc.</u>, No. 03 Civ. 2056 (RWS), 2003 WL 22535093, at *1-2 (S.D.N.Y. Nov. 7, 2003) (finding arbitral order dismissing one party's claims to have "finally and definitely disposed of all of [the party's] claims in the Arbitration, operat[ing] as a 'final' arbitration award within

the meaning of the FAA" even though the remaining parties in the arbitration continued to arbitrate for an additional three years); Metallgesellschaft A.G. v. M/V Captain Constante, 790 F.2d 280, 283 (2d Cir. 1986) ("[A]n award which finally and definitively disposes of a separate independent claim may be confirmed although it does not dispose of all the claims that were submitted to arbitration.").[13]

Finally, petitioner improperly focuses on the formality and styling of the 2019 Order, such as the lack of the word "award," to support his claim that the order was not final.  See Petitioner's Opp'n at 3-4.  This approach misses the forest for the trees.  "The arbitrator's rationale for the award need not be explained."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).  Further, "the finality of an arbitration agreement should be judged by substance and effect, not by superficial technicalities."  Olson v. Wexford Clearing Servs. Corp., 397 F.3d 488, 492 (7th Cir. 2005).

In this instance, the Panel issued an order that rendered a final and reviewable determination.  See Israel, 120 F.3d at 365.

---

[13]    Indeed, the fact that the arbitration was continuing with other claimants is more of a reason to immediately challenge the 2019 Order. Under petitioner's approach, the arbitration would have continued for years and if he then succeeded in reversing the dismissal, his claim would then have to be litigated separately resulting in additional arbitration fees and costs to all parties.

Thus, no specific form or additional language was required.
Further, FINRA Rule 13904, which petitioner argues contains
specifications that must necessarily be present in order for an
award to be final, does not supersede the Second Circuit's test
for finality, namely that the Panel's decision "resolved all issues
submitted to arbitration. . . so that no further litigation [was]
necessary to finalize the obligations of the parties."  Rocket
Jewelry Box, Inc., 157 F.3d at 177.  Nor would it have been
reasonable for the Panel to have included many of the listed
specifications in the 2019 Order (i.e. there was no reason to
include information related to damages awarded, given that
petitioner and respondent had reached a "walk-away" settlement in
which all claims would be dismissed).[14]  Moreover, in considering
whether to include the specifications in Rule 13904, the Panel
"had the authority to interpret and determine [Rule 13904's]
applicability . . . under the Code," and the manner in which to
issue a final order that was sufficient to the Panel's purposes.
FINRA Rule 13413, Jurisdiction of Panel and Authority to Interpret
the Code; see, e.g., Lawrence v. Rayond James Fin. Servs., Inc.,

---

[14]    In addition, petitioner fails to mention that the 2019 Order was forwarded
to the parties by FINRA, which included in the cover letter the names of the
arbitrators, the Arbitration Number, the parties, and the names of the attorneys
representing the parties.  See Kelly Decl. Ex. 1.

-17-

No. 18 Civ. 6590 (LGS), 2019 WL 120727, at *3 (S.D.N.Y. Jan. 4, 2019) (finding that Rule 13413 "gives the arbitrator power to interpret and determine the applicability of [various FINRA Rules]"). Furthermore, it is worth noting that petitioner did not contemporaneously request the Panel to expand or further elucidate its order.

In sum, the 2019 Order was final and subject to judicial review. Moster's Petition to vacate was filed years outside the FAA's strict three-month window.[15]

## II. Petitioner Failed to Timely Challenge the November 5, 2021 Award

In addition to the parties' disagreement regarding the finality and timeliness of petitioner's challenge to the 2019 Order, the parties also dispute whether petitioner timely moved to vacate the 2021 Award. On this issue, there is some agreement between the parties. To start, it is undisputed that the "clock" for the three-month period for service of the petition began ticking the day the award was issued, on November 5, 2021. See Petitioner's Opp'n at 8-9; Respondent's Mem. at 12 n.16; Triomphe

---

[15]     As there was no downside to timely challenging the 2019 Order, the Court can only conclude that a contemporaneous decision was made not to appeal and based on this opinion was made for good reason. The favorable result years later for the remaining claimants presumably led to the filing of this position. While the Court appreciates the origin of "nothing ventured, nothing gained," the law is clear.

Partners, Inc. v. Realogy Corp., No. 10 Civ. 8248 (PKC), 2011 WL
3586161, at *2 (S.D.N.Y. Aug. 15, 2011) (Section 12's clock starts
ticking "from the date that the [arbitration] award is delivered,
not the day after.")   Further, the parties also agree that the
last day of the three-month window for service of the petition was
Saturday, February 5, 2022.   See Petitioner's Opp'n at 8-9;
Respondent's Mem. at 12.   However, the parties' agreement ends
there.

Petitioner takes the position that, because February 5, 2022
was a Saturday, service on Monday, February 7, 2022 was effective,
as it was the following business day.   See Petitioner's Opp'n at
9.   In support of his argument, petitioner relies on Federal Rule
of Civil Procedure 6(a)(1)(C), as well as Third Circuit and Ninth
Circuit authority.   Id. at 8.   Fed. R. Civ. P. 6(a)(1) governs the
computation of time under the federal rules, local rules, or
statutes, which do not provide a specific method of computation.
It states the following:

> When the period is stated in days or a longer unit of
> time:
>> (A)   exclude the day of the event that triggers
>>        the period;
>> (B)   count every day, including intermediate
>>        Saturdays, Sundays, and legal holidays; and
>> (C)   include the last day of the period, but if
>>        the last day is a Saturday, Sunday, or legal
>>        holiday, the period continues to run until
>>        the end of the next day that is not a

Saturday, Sunday, or legal holiday.

As discussed, petitioner recognizes that the three-month clock starts to run on November 5, 2021, the date the award was issued.  This is inconsistent with Rule 6(a)(1)(A), and as such, petitioner effectively acknowledges that Rule 6 does not apply to arbitration cases, as provided in Rule 81(a)(6)(B).[16]

This conclusion is supported by Second Circuit case law. Specifically, the Circuit's decision in Dalla-Longa v. Magnetar Cap. LLC makes this clear when it calculates the time for service of petition under the FAA: "Here, the arbitration award was issued on September 9, 2019.  Dalla-Longa thus had until December 9, 2019, to properly serve notice of any motion or petition to vacate."[17] 33 F.4th 693, 696 (2d Cir. 2022).  Even prior to Dalla-Longa, courts in this district reached the same result.  See Triomphe Partners, Inc., 2011 WL 3586161 at *2 ("Rule 6(a)(1)(A) does not apply to the limitation period."); Anglim v. Vertical Grp., No. 16 Civ. 3269 (KPF), 2017 WL 543245, at *7 (S.D.N.Y. Feb. 10, 2017).

---

[16]     "These rules, to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures:
. . .
(B) 9 U.S.C., relating to arbitration."  Fed. R. Civ. P. 81(a)(6)(B).

[17]     Given that Second Circuit authority is binding on courts within the Circuit, petitioner's reliance on contrary case law from the Third Circuit, Huertas v. Foulke Mgmt. Corp., 2021 WL 5984696 (3d Cir. Dec. 17, 2021), and case law from the Ninth Circuit, Steven v. Jiffy Lube Int'l, Inc., 911 F.3d 1249, 1252 (9th Cir. 2018), does not change the outcome.

-20-

We acknowledge that the Second Circuit has not directly addressed the question of whether Rule 6(a)(1)(C) applies to a calculation of timely service under the FAA. As noted, petitioner acknowledges that Rule 6(a)(1)(A) does not apply to arbitration cases, but urges that 6(a)(1)(C) does apply. However, petitioner does not advance any logical reason to conclude that the application of Rule 6(a)(1) is divisible. Thus, the well-developed case law that establishes that Rule 6(a)(1)(A) is not applicable to arbitration cases applies equally to Rule 6(a)(1)(C).[18] Consequently, we find that petitioner's service on February 7, 2022 was untimely, and the Petition is dismissed for this ground as well.[19]

## CONCLUSION

Accordingly, for the reasons stated above, we grant respondent's motion to dismiss the petition and deny petitioner's petition to vacate the arbitration award. The Clerk of the Court

---

[18]   Petitioner's earlier effort to serve respondent's counsel on February 4, 2022 was ineffective. As in Dalla-Longa, petitioner's unilateral effort to use a method of service not provided for in the Federal Rules is considered "improper," as "[petitioner's] counsel had not asked [respondent's] counsel for consent to email service, and [respondent's] counsel had not provided consent to email service in writing." Dalla-Longa, 33 F.4th at 696. It is irrelevant that respondent's counsel represented respondent in the arbitration proceeding. Id.

[19]   Given our rulings on the timeliness issues, we do not reach petitioner's substantive arguments in support of his motion to vacate.

is respectfully directed to close the motion pending at ECF No. 16

and to close the case.

        **SO ORDERED.**

Dated:    New York, New York
           September 26, 2022

                            NAOMI REICE BUCHWALD
                      UNITED STATES DISTRICT JUDGE

-22-